**A. BOTTACCHI S. A., as Owners of the M. V. PUNTA BEAGLE, Plaintiff,**

v.

**PHILIPP BROTHERS LATIN AMERICA CORPORATION et al., Defendants.**

**No. 75 Civ. 942.**

United States District Court, S. D. New York.

March 18, 1976.

Healy & Baillie, New York City, for plaintiff; Jack A. Greenbaum, New York City, of counsel.

Burlingham, Underwood & Lord, New York City, for defendants; Michael Marks Cohen, Dorothy P. Watson, New York City, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Defendants[1] in this general average case involving a voyage between Argentina and Puerto Rico have moved for summary judgment dismissing the complaint on the ground of time-bar and laches. For the reasons set forth below, the motion is granted and the complaint is dismissed.

The voyage in question began in October 1973, when the M. V. PUNTA BEAGLE picked up a cargo of steel reinforc-

---

1. All of the defendants, save W. Steiner & Co.—who has, as of the time of this motion, filed no answer—join in this motion.

ing bars at Villa Constitucion, Argentina, for carriage to San Juan, Puerto Rico. Plaintiff is the owner of the BEAGLE, while defendants Philipp Bros. and Pan Am were owners of the cargo and defendants Royal and Indemnity were the cargo underwriters. When the vessel discharged the cargoes in March, 1974 in Puerto Rico, plaintiff declared a general average in connection with certain calamities which befell the vessel during her voyage.[2] At the same time, the cargo interests took discovery of the vessel and its officers pursuant to F.R.C.P. 27. Eleven months later, on February 25, 1975, plaintiff commenced the instant suit. Although the defendants were apparently never formally served, their attorney secured a copy of the complaint from court files and on May 7, 1975 the defendants Philipp Bros., Pan Am, Royal and Indemnity filed their answer, amending it six days later to raise the defense of time-bar.

There being no specific statute of limitations for a maritime general average claim, the principle of laches applies. In applying this principle, the courts look to the analogous state or local statute of limitations for guidance in determining whether there has been impermissible delay in commencing an action. *Gardner v. Panama Railroad Co.* (1951) 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31; *Larios v. Victory Carriers, Inc.* (2d Cir. 1963), 316 F.2d 63, 65; *Liman v. India Supply Mission* (S.D.N.Y.1974) 381 F.Supp. 368, 370. The analogous statute is that of New York, the forum state. *Id.* While New York has a six year statute of limitations for contract actions generally [C.P.L.R. § 213(2)], it is modified by the "borrowing" provision that a suit may not be commenced under any circumstances "after the expiration of the time limited by the laws of . . . the place . . . where the cause of action accrued." C.P.L.R. § 202.

It is well settled in admiralty law that a cause of action for general average contribution accrues in the port of destination. *Argyll Shipping Co. v. Hanover Insurance Co.* (S.D.N.Y.1968) 297 F.Supp. 125, 127–8. Where the shipowner elects to have the general average adjusted is immaterial.[3] *Id.* (although the shipowner selected New York as the place of general average adjustment pursuant to provisions in the bills of lading, the court concluded that the cause of action for general average arose in Japan, the port of destination). Since the BEAGLE discharged in Puerto Rico, that jurisdiction's six-month general average statute applies.[4] 10 LPRA § 1909.

The fact that plaintiff commenced the instant action well after the statutory 6 months had run[5] is not, however, the end of our inquiry. Although the Puerto Rican statute is relevant to the determination of laches in a suit of this nature, "the matter should not be determined merely by a reference to and a mechanical application of the statute of limitations. The equities of the parties must be considered as well." *Gard-*

---

**2.** Although plaintiff's average adjustor attended the BEAGLE in San Juan in March, 1974, no statement of general average has ever been issued.

**3.** Plaintiff herein elected, pursuant to provisions in the bills of lading, to have the general average adjusted in Buenos Aires, Argentina. It argues from that fact that the cause of action for general average therefore accrued in Argentina, thus necessitating application of that country's one year statute of limitations. The law is to the contrary. See also *Liman v. India Supply Mission, supra,* at 370.

**4.** Plaintiff urges us to find that Puerto Rico's six month rule, which derives from the 1886 Commerce Code of Spain has been superceded by 31 LPRA § 5141, the general negligence statute which establishes a one year limitation period. It argues that when federal law pre-empted the maritime field, 10 LPRA § 1909 was repealed *sub silentio.* Although we do not dispute that federal law has pre-empted the field generally, we do, however, reject plaintiff's contention that § 1909 was specifically repealed by virtue of preemption, as there is no federal general average statute of limitations which would conflict therewith and thus supercede it.

**5.** In fact, plaintiff filed its complaint 11 months after its cause of action accrued.

ner v. Panama R. Co., supra, 342 U.S. at 30–31, 72 S.Ct. at 13, 96 L.Ed. at 36. The basic approach to a consideration of equities is set forth by the Court of Appeals in *Larios v. Victory Carriers, Inc.* (2d Cir. 1963) 316 F.2d 63. Speaking through Friendly, C. J., it there declared (at 66) "[w]hen the suit has been brought after the expiration of the state limitation period, a court applying maritime law asks why the case should be allowed to proceed . . . " Under such a rule-of-thumb, the ultimate burden of persuasion both as to excuse for delay in filing and as to lack of prejudice to the defendant rests on the plaintiff. *Id.*, at 67, Gilmore & Black, *Admiralty* (1957), at 631. However, as the *Larios* court observed, those two factors are inter-related and must be viewed jointly. More specifically as relates to this case, "a weak excuse may suffice if there has been no prejudice". *Id.* Defendants concede that there has been no prejudice. They were on notice of the complaint shortly after its filing, and conducted depositions of ship personnel shortly after the vessel's arrival in San Juan. However, the difficulty with plaintiff's position is that its "excuse" is non-existent. It tries to justify its delay in filing by contending that counsel had advised that the one year Argentine or one year Puerto Rican statute applied.[6] For all that appears, such advice may have been sought after the six months had expired. Be that as it may, we have concluded that when, as here, the plaintiff is a sophisticated maritime company—represented by experienced admiralty counsel[7]—ignorance of the law cannot serve as an excuse. The cases plaintiff cites in support of its contention that such ignorance is at least a "weak" excuse within the meaning of *Larios, su-*

pra, are inapposite. Both *Gutierrez v. Waterman S.S. Corp.* (1963) 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 and *Hill v. W. Bruns & Co.* (2d Cir. 1974) 498 F.2d 565 were cases involving seamen who on counsel's advice forebore suit (*Gutierrez*) or who, unaware of their right to sue, failed to timely commence suit (*Hill*). Whatever may be said for such an excuse when tendered by a seaman ignorant of the law, it cannot avail an entity such as the plaintiff.[8]

The complaint is, accordingly, dismissed as' time-barred. Let judgment enter.

SO ORDERED.

---

**6.** Even this rather flimsy "excuse" was presented to us in the form of statement of counsel at oral argument. Plaintiff submitted no affidavits seeking to explain its delay any further.

**7.** The "counsel" referred to has no relationship to the firm now representing plaintiff.

**8.** We need not address ourselves to the question of the applicability of the rules announced in *McDaniel v. Gulf & South American S.S. Co.* (5th Cir. 1955) 228 F.2d 189 and *Claussen v. Mene Grande Oil Co.*, C.A. (3d Cir. 1960) 275 F.2d 108, as those cases are distinguishable on their facts and the rule in the Second Circuit, as announced by Judge Friendly in the *Larios* case, controls.